UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MACSTEEL, INC. a Division of
Quanex Corporation,

        Plaintiff,

v.                                    Case No. 05-74566
                                    Honorable Patrick J. Duggan

ERAMET NORTH AMERICA,

        Defendant.

_____/

**OPINION AND ORDER**

At a session of said Court, held in the U.S.
District Courthouse, Eastern District
of Michigan, on November 16, 2006.

PRESENT:   THE HONORABLE PATRICK J. DUGGAN
               U.S. DISTRICT COURT JUDGE

Plaintiff MacSteel ("MacSteel") initiated this action against Defendant Eramet

North America ("Eramet") in the Circuit Court for the County of Jackson, State of

Michigan, alleging that Eramet breached an agreement to sell silicomanganese ("SiMn")

for use at MacSteel's plant in Jackson, Michigan ("Jackson agreement").  On December

1, 2005, Eramet removed MacSteel's Complaint to federal court based on diversity

jurisdiction, 28 U.S.C. §§ 1332 & 1441.[1]  MacSteel thereafter filed a First Amended

_____

[1]MacSteel is a Delaware corporation with its principal place of business in
Jackson, Michigan.  *See* First. Am. Compl. ¶ 1.  Eramet is a Pennsylvania corporation
with its principal place of business in Corapolis, Pennsylvania.  *See id.* ¶ 2.

Complaint, adding a second count alleging that Eramet also breached an agreement to sell

SiMn for use at MacSteel's plant in Fort Smith, Arkansas ("Fort Smith agreement").

Presently before the Court are the following motions for summary judgment, filed on

August 31, 2006:

> (1)   Eramet's motion for summary judgment with respect to
>        MacSteel's claim, in Count II of its First Amended
>        Complaint, that Eramet breached an option clause in
>        the Fort Smith agreement.
>
> (2)   MacSteel's motion for partial summary judgment as to
>        Count I of its First Amended Complaint relating to the
>        Jackson agreement;
>
> (3)   MacSteel's motion for partial summary judgment as to
>        Count II of its First Amended Complaint relating to the
>        Fort Smith agreement;

The parties' motions have been fully briefed and the Court held a hearing on the motions

on October 25, 2006.

## I.      Standard for Summary Judgment

Summary judgment is appropriate only when there is no genuine issue as to any

material fact and the moving party is entitled to judgment as a matter of law.  *See* FED. R.

CIV. P. 56(c).  The central inquiry is "whether the evidence presents a sufficient

disagreement to require submission to a jury or whether it is so one-sided that one party

must prevail as a matter of law."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52,

106 S. Ct. 2505, 2512 (1986).  After adequate time for discovery and upon motion, Rule

56(c) mandates summary judgment against a party who fails to establish the existence of

an element essential to that party's case and on which that party bears the burden of proof at trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552 (1986).

The movant has an initial burden of showing "the absence of a genuine issue of material fact." *Id.* at 323. Once the movant meets this burden, the non-movant must come forward with specific facts showing that there is a genuine issue for trial. *See Matsushita Electric Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 1356 (1986). To demonstrate a genuine issue, the non-movant must present sufficient evidence upon which a jury could reasonably find for the non-movant; a "scintilla of evidence" is insufficient. *See Liberty Lobby*, 477 U.S. at 252, 106 S. Ct. at 2512.

The court must accept as true the non-movant's evidence and draw "all justifiable inferences" in the non-movant's favor. *See id.* at 255. The inquiry is whether the evidence presented is such that a jury applying the relevant evidentiary standard could "reasonably find for either the plaintiff or the defendant." *See id.*

## II.    Factual Background

On December 2, 2003, Tom McElroy ("McElroy"), MacSteel's Purchasing Manager for its facility in Jackson, Michigan, issued a Request for Quotation ("RFQ") to several suppliers of SiMn. The RFQ requested quotes for specified amounts of SiMn to be delivered to MacSteel's facilities in Jackson, Michigan and Fort Smith, Arkansas in the first half of 2004. Specifically, in the RFQ, MacSteel sought 1,500 net tons of SiMn for its Jackson facility, to be delivered between January and June 2004, and a barge of SiMn for its Fort Smith facility for use in April 2004.

On December 3, 2003, Thomas Pompili ("Pompili"), Eramet's Vice President of
Manganese Sales, sent an e-mail to McElroy and Mike Weeks ("Weeks"), MacSteel's
Fort Smith Purchasing Manager, setting forth price quotations and other terms for
Eramet's sale of SiMn for MacSteel's Jackson and Fort Smith facilities.  With respect to
the Jackson facility, for 1,400 net tons of SiMn to be delivered in April 2004, Pompili
listed a price of $.32 per pound and a payment term of net 30 days from the date of
invoice.  Pompili listed the same price and payment term for 1,500 net tons of SiMn to be
delivered to MacSteel's Fort Smith facility between January and June 30, 2004.

In the afternoon on the following day, December 4, 2003, Pompili and McElroy
engaged in a series of telephone conversations regarding Eramet's sale of SiMn for
MacSteel's Fort Smith and Jackson facilities.  According to Pompili, by the conclusion of
these phone conversations, he and McElroy reached an oral agreement.  *See* MacSteel's
Mot. for Partial Summ. J. as to Count I, Addendum 2 (Pompili Dep.) at 12-14; 34-36; 46.
It is undisputed that, during their telephone conversations, Pompili and McElroy
discussed whether Eramet would grant MacSteel an option to purchase SiMn for its Fort
Smith and Jackson facilities during the second half of 2004, for the same prices quoted
for the first half of 2004.  MacSteel and Eramet disagree, however, as to whether they
eventually agreed on an option provision.

At 5:16 p.m. on December 4, McElroy sent an e-mail to Weeks, stating:

> I placed the orders with Eramet.  Note that they quoted net 30
> days and they said they must hold to this, especially
> considering the reduced price.  We agreed to stay with our

4

> standard terms (2nd day of 2nd month) and raise the Jackson
> price back to $.32 to compensate them, and I told Tom
> [Pompili] that you would call them [Eramet] to advise what
> you want to do.  We have the option to extend this price
> through the 2nd half, and we have until the end of May to
> decide.

See MacSteel's Mot. for Partial Summ. J. as to Count I, Ex. C.  At 5:44 p.m. on the same

date, Pompili sent an e-mail to Tom Kalish, Eramet's National Account Executive,

indicating:

> We have booked the following at Quanex for the first half.
>
> Quanex Fort Smith- April Barge $0.3175, net 30 days-
> PO#40595
> Quanex Jackson- First half fixed price $0.32, terms 2nd day 2
> month- PO47129M -1500 nt
>
> John, we have also booked US Steel Gary SIMn at $0.3175
> for Q1.  Lets [sic] discuss our first half SIMn position in the
> morning before the Ameristeel quote is due at noon.  Should
> have any [sic] answer from SDI CC in the morning.

See id., Ex. D.  During his deposition in this case, Pompili explained that when he used

the term "booked" in the above e-mail, he meant that he had an agreement with MacSteel.

See id., Addendum 2 (Pompili Dep.) at 36-39.  Pompili sent a copy of this e-mail to

Robert Burdette, Eramet's Director of Corporate Credit, among other individuals at

Eramet.  See id.

Kalish testified during his deposition that he understood Pompili's December 4 e-

mail as indicating that Pompili had reached an agreement with MacSteel to sell the latter

SiMn.  See MacSteel's Mot. for Partial Summ. J. as to Count II, Addendum 3 (Kalish

Dep.) at 34-35; 50-52. The following day, December 5, 2003, Kalish completed and signed a Price Approval Sheet reflecting Eramet's delivery, by April 2004, of 1,400 net tons of SiMn at a price of $0.3175 per pound to MacSteel's Fort Smith facility.  *See id*., Ex. F.  The Price Approval Sheet also states payment terms of net 30 days from date of invoice.  *See id*.  On December 4 or 5, Kalish telephoned Weeks at MacSteel's Fort Smith facility to congratulate him on the agreement.

On December 5, Weeks mailed Purchase Order 040595 to Eramet.  The front page of this purchase order reflects Eramet's delivery of 1 barge of SiMn to MacSteel's Fort Smith facility for use beginning April 2004.  *See id*., Ex. G.  The front page also indicates a price of $0.3175 per pound and includes the following language: "Additional Material Option to be Finalized in May, 2004."  *See id*.  Ten days later, on December 15, 2003, McElroy mailed Purchase Order 47129 M to Eramet.  This purchase order reflects Eramet's sale of SiMn to MacSteel's Jackson facility at $0.32 per pound, to be delivered by June 30, 2004.  *See* MacSteel's Mot. for Partial Summ. J. as to Count I, Ex. E. Although not apparent on the copy submitted to the Court, the parties indicate that the Jackson purchase order also contains a payment term of 45-days from invoice which deviated from Eramet's standard payment term of 30-days.[2]  The front page of the Jackson purchase order also contains the following language: "MACSTEEL HAS THE

---

[2]While Eramet contended that it did not agree to the extended payment term, this issue is not relevant to the pending motions as Eramet subsequently decided to honor that term of the Jackson agreement.

OPTION TO EXTEND THIS CONTRACT TO COVER 2ND HALF REQUIREMENTS AT THIS SAME PRICE.  THIS OPTION MUST BE EXERCISED BY 5/31/04."  *See id.* (capitalization in original).

Shortly thereafter, on December 18, 2003, Eramet terminated Pompili.  On January 12, 2004, Eramet shipped SiMn to MacSteel's Jackson facility, pursuant to Purchase Order 47129 M.  Eramet claims that on or about the same date, Kalish and other Eramet executives reviewed MacSteel's purchase orders and "discovered" that they contained terms not included in Pompili's December 4, 2003 e-mail detailing the terms he negotiated with McElroy– particularly, language giving MacSteel the option to purchase materials for the second half of 2004, at the price fixed for the first half of 2004.  *See* Eramet's Resp. to Mot. for Partial Summ. J. as to Count I, Ex. 10 at 42-44; 61 & Ex. 1 at 45.  Kalish called McElroy and Weeks on January 14, and informed them that Eramet considered the option clause in the purchase order for Jackson "null and void"[3] and that Eramet would not honor the entire purchase order for Fort Smith.

Weeks, on behalf of MacSteel, requested that Eramet prepare a written letter notifying MacSteel of its repudiations.  By e-mail dated January 21, 2004, Kalish

---

[3]Because Eramet shipped SiMn to MacSteel at the latter's Jackson facility on January 12, 2004, pursuant to MacSteel's purchase order 47129 M, it considered itself bound to continue shipping the product set forth in that purchase order through June 30, 2004.  Eramet also believed that, due to its January 12 shipment, it was bound to the payment term set forth in the purchase order, even though it maintained that the term conflicted with the payment term Pompili negotiated with McElroy.  Eramet takes the position, however, that its January 12 shipment did not bind it to MacSteel's "additional" option term for the second half of 2004.

7

informed Weeks: "[d]o not wait for a letter."  *See* Eramet's Resp. to Mot. for Partial

Summ. J. as to Count I, Ex. G.  MacSteel's attorneys thereafter sent a letter to Eramet,

dated January 23, 2005, requesting that Eramet retract its repudiation as to MacSteel's

option to extend the Jackson agreement through the second half of 2004, and its

repudiation of the entire Fort Smith agreement.  As to Jackson, Eramet's attorneys

responded that, because Eramet never agreed to and had objected to the option term

contained on the purchase order, Eramet had no contractual obligation to provide

MacSteel with any option for the second half of 2004.  With respect to Fort Smith,

Eramet's attorneys advised:

> Purchase Order no. 040595 was an offer directed by your
> client to Eramet North America, which my client never
> accepted.  In fact, Eramet North America rejects the offer set
> forth in Purchase Order 040595.  As a result, Eramet North
> America and MacSteel have no contract, agreement or
> understanding of any kind with respect to the purported
> subject matter of Purchase Order No. 040595.

*See* MacSteel's Mot. for Partial Summ. J. as to Count II, Ex. J.

MacSteel asserts that it subsequently secured from other suppliers the SiMn it

needed for its Fort Smith facility for 2004 and for its Jackson facility for the second half

of 2004.  Because the cost of SiMn was increasing rapidly in early 2004,[4] however,

MacSteel claims that it paid substantially more for its facilities' SiMn needs than the

---

[4]During his deposition, Burdette acknowledged that the price of SiMn was rising
dramatically in the first half of 2004; in fact, Burdette agreed that he had not seen such a
price increase in his career at Eramet.  *See* MacSteel Mot. for Partial Summ. J. as to
Count II, Addendum 1 (Burdette Dep.) at 133.

prices set forth in its agreement with Eramet.  Specifically, MacSteel alleges that it

incurred $300,221.17 in cover damages for its Fort Smith facility and $364,542.54 in

cover damages for its Jackson facility.

MacSteel thereafter filed the pending lawsuit in order to recover its damages.  In

Count I of its First Amended Complaint, MacSteel alleges that Eramet breached the

provision in the Jackson agreement granting MacSteel an option to purchase SiMn from

Eramet at $.32 per pound through the second half of 2004.  In Count II of its First

Amended Complaint, MacSteel alleges that Eramet breached the entire Fort Smith

agreement by failing to provide SiMn to MacSteel's Fort Smith facility in April 2004, and

by failing to honor the provision in the agreement granting MacSteel the option to

purchase additional SiMn at the fixed price of $0.3175 through the second half of 2004.

### III.   Eramet's Motion for Partial Summary Judgment as to the Option Term in the Fort Smith Agreement

Eramet seeks partial summary judgment with respect to MacSteel's claim in Count

II of its First Amended Complaint that Eramet breached the Fort Smith agreement by

repudiating the agreement's option provision.  Specifically, Eramet argues that the option

provision contained in Purchase Order 040595 does not contain a quantity term and

therefore is not enforceable against it pursuant to the Statute of Frauds set forth in

Michigan's Uniform Commercial Code ("UCC"), MICH. COMP. LAWS ANN. § 440.2201.

The UCC's Statute of Frauds provision reads, in relevant part:

> (1) Except as otherwise provided in this section a contract for
> the sale of goods for the price of $1000 or more is not

9

enforceable by way of action or defense unless there is a writing sufficient to indicate that a contract for sale has been made between the parties and signed by the party against whom enforcement is sought or by his or her authorized agent or broker. A writing is not insufficient because it omits or incorrectly states a term agreed upon but the contract is not enforcable under this subsection beyond the quantity of goods shown in the writing.

(2) Between merchants, if within a reasonable time a writing in confirmation of the contract and sufficient against the sender is received and the party receiving it has reason to know its contents, it satisfies the requirements of subsection (1) against the party unless written notice of objection to its contents is given within 10 days after it is received.

(3) A contract that does not satisfy the requirements of subsection (1) but is valid in other respects is enforceable in any of the following circumstances:

. . .

(b) If the party against whom enforcement is sought admits in his or her pleading or testimony or otherwise in court that a contract for sale was made, but the contract is not enforceable under this section beyond the quantity of goods admitted.

. . .

MICH. COMP. LAWS ANN. § 440.2201(1).

There is no dispute in this case that Eramet's sale of SiMn to MacSteel is a sale of goods for more than $1,000 and thus is subject to the Statute of Frauds. It also is undisputed that there is no writing signed by Eramet which contains the option provision.[5]

---

[5]While MacSteel contends that Eramet's representatives admitted during their depositions that a contract for sale was made, thereby satisfying subsection (3)(b) of the Statute of Frauds, none of the testimony on which MacSteel relies contains an admission

10

Assuming for purposes of Eramet's motion that Pompili and McElroy reached an oral

agreement on December 4, 2003, whereby Eramet agreed to deliver SiMn to MacSteel's

Fort Smith facility by April 2004 and to grant MacSteel an option to purchase additional

material during the second half of 2004, there can be no dispute that Purchase Order

040595 constitutes a writing in confirmation of the oral agreement.[6]  MICH. COMP. LAWS

ANN. § 440.2201(2).  Eramet and MacSteel clearly are merchants, Weeks sent the

purchase order to Eramet a day after Pompili and McElroy concluded their negotiations,

and Eramet did not object to the contents of the purchase order, in writing or otherwise,

within 10 days after it was received.

Section 2201 provides, however, that the written agreement is not enforceable

beyond the quantity of goods shown in the writing.  MICH. COMP. LAWS ANN. §

440.2201.  As the Michigan courts have explained, under Section 2201 "the quantity term

must be specifically stated."  *Great N. Packaging, Inc. v. Gen. Tire & Rubber Co.*, 154

---

regarding the option provision in the Fort Smith agreement.  In any event, even if there
was such an admission, "the contract is not enforceable under this section beyond the
quantity of goods admitted."  MICH. COMP. LAWS ANN. § 2201(3)(b).  MacSteel has not
identified an admission regarding a quantity of goods beyond the amount Eramet agreed
to deliver to MacSteel in the first half of 2004.

[6]The Court must assume, for the purpose of deciding Eramet's motion for
summary judgment, that Pompili and McElroy agreed to the option provision and that the
provision, therefore, was not an additional term that MacSteel inserted in its confirmatory
writing.  If the Court did not make this assumption, it first would have to address whether
the option provision, as an additional term, even became part of the parties' agreement–
an issue which this Court finds unnecessary to resolve in order to rule on Eramet's
pending motion.

11

Mich. App. 777, 786, 399 N.W.2d 408, 412-13 (1986) (citing *Lorenz Supply Co. v. Am. Standard, Inc.*, 419 Mich. 610, 614-15, 358 N.W.2d 845 (1984)).  However, as long as the writing contains *a* quantity term, the writing is not insufficient because the term used is imprecise.  *In re Frost*, 130 Mich. App. 556, 561, 344 N.W.2d 331, 334 (1983)(emphasis added) (stating that "[o]nce a quantity term is found to exist in the agreement, the agreement need not fail because the quantity term is not precise.") If a quantity term is stated, parol evidence may be introduced to explain or supplement the term.  *Id.*; *see also Great N. Packaging*, 154 Mich. App. at 787, 399 N.W.2d. at 413.  On the other hand, if the writing is totally silent as to quantity, parol evidence cannot be used to supply the missing quantity term.  *See Ace Concrete Products Co. v. Charles J. Rogers Constr. Co.*, 69 Mich. App. 610, 614-15, 245 N.W.2d 353, 356 (1976) (rejecting the plaintiff's invitation to resort to evidence adduced at trial to supply the quantity term where the written agreements failed to specify any quantity term).

In this case, with respect to the option addendum, Purchase Order 040595 states: "Additional Material Option to be Finalized in May 2004."  Eramet argues that this provision fails to specify any quantity term.  To determine whether "[a]dditional material" states a quantity term, the Court looks to previous decisions of the Michigan courts and the Fourth Circuit Court of Appeals' decision in *Thomas J. Kline, Inc. v. Lorillard, Inc.*, 878 F.2d 791 (1989), where the court engaged in a thorough discussion of what terms

satisfy the Statute of Frauds' quantity requirement.[7]

In *Thomas J. Kline*, Lorillard, a tobacco products manufacturer, agreed to sell

tobacco products to Thomas J. Kline, Inc. ("Kline").  878 F.2d at 792.  Lorillard sent

Kline's President a letter stating, in relevant part:

> We are pleased to inform you that your request to purchase
> Lorillard products on a direct basis has been approved by our
> New Accounts Committee, and you have been added to our
> direct list of customers for Full Line . . .

*Id*. at 793.  Lorillard argued that the letter failed to specify a quantity term; Kline took the

position that the letter's references to "direct basis" and "[f]ull [l]ine" sufficiently set

forth a quantity term to permit it to introduce parol evidence to explain what the parties

intended by those references.  The Fourth Circuit ultimately agreed with Lorillard after

reviewing decisions where courts considered varying terms purportedly referring to

quantity.

As the Fourth Circuit summarized those decisions:

> . . . instructive are those cases in which ambiguous terms of
> quantity have been deemed sufficient to prove an enforceable
> contract.  This court, for example, recently held that quantity
> was adequately identified when specific language "referred to
> meeting the purchaser's needs."  *Barber and Ross Co. v.
> Lifetime Doors, Inc.*, 810 F.2d 1276, 1280-81 (4th Cir. 1987).
> *See also Kansas Power and Light Co. v. Burlington Northern
> Railroad Co.*, 740 F.2d 780 (10th Cir. 1984) (writings
> mentioning possible maximum and minimum amounts of

---

[7]In *Thomas J. Kline*, the Fourth Circuit was applying Maryland's Uniform
Commercial Code which contains a Statute of Frauds provision identical to Michigan's
Section 2201.

> shipped coal sufficient to create requirements contract). It has been held that the words "the yarn" for "a potential program" could be sufficient written expression of quantity. *O.N. Jonas Co., Inc. v. Badische Corp.*, 706 F.2d 1161, 1163-64 (11th Cir. 1983). Courts have consistently found that words with some possible nexus to amount, including "all," "bags," or even customary terms such as lot numbers, can provide a basis for the admission of parol evidence. *See also Maryland Supreme Corp. v. The Blake Co.*, 279 Md. 531, 369 A.2d 1017 (1977) (written phrases "for the above mentioned project" and "throughout the job" are sufficient quantity terms).

*Thomas J. Kline*, 878 F.2d at 794-95. The court concluded that Lorillard's letter to Kline was totally silent as to quantity, concluding that "[t]here simply is no arguable connection in the law or in the English language between 'direct basis' and 'amount.' " *Id*. at 795. As the court noted, "[p]recisely how one converts 'direct basis' into some variety of amount is not adequately explained." *Id*.

The Michigan Court of Appeals found no quantity term stated in a writing where the space for the quantity term was left blank and the goods identified were "concrete for tunnels." *Ace Concrete Products Co.*, 69 Mich. App. at 614, 245 N.W.2d at 356. In *Acemco, Inc. v. Olympic Steel Lafayette, Inc.*, the court reached the same conclusion when analyzing the following language in the parties' writing: "During the term of this Agreement, the Seller agrees to sell to the Buyer such quantities of the Products as the Buyer may specify in its purchase orders, which the buyer may deliver at its discretion." No. 256638, 2005 WL 2810716, at *4 (Mich. Ct. App. Oct. 27, 2005) (unpublished opinion). The *Acemco* court reasoned:

14

> Reasonable minds could not construe the above language as containing a quantity term because the language specifies no quantity whatsoever. The language instead grants complete discretion to the buyer to deliver purchase orders containing any amount or no amount at its discretion without any other limiting feature. The grant of complete discretion results in a countless number of possible quantities from zero to infinity. "Any" quantity is in fact no quantity at all.

*Id*.

Similarly, the Eighth Circuit concluded that no quantity was stated in a writing where the defendant agreed to purchase poultry by-product meal from the plaintiff "for the next three (3) years," but the writing only set forth a quantity for the first year. *Simmons Foods, Inc. v. Hill's Pet Nutrition, Inc.*, 270 F.3d 723, 726-27 (8th Cir. 2001). As one treatise explains:

> As a general rule, a contract for the sale of goods must obligate the seller to deliver and the buyer to accept a definite quantity of goods, or the contract lacks mutuality and is, therefore, void. Hence, generally, a contract which does not obligate the buyer to take any specific or definite quantity of goods lacks mutuality and is not enforceable, and the same is true where the seller is not obligated to sell any definite quantity. So, a contract to sell personal property is void for want of mutuality if the quantity to be delivered is conditioned entirely on the will, wish, or want of one of the parties . . .

77A C.J.S. *Sales* § 22 (2006).

Neither MacSteel nor Eramet have referred this Court to a case where the word "additional" was used to specify the quantity term. The Court is persuaded by *Simmons Foods* and *Acemco* that the option addendum's reference to "additional material" is

15

insufficient to state a quantity term under Section 2201.  Pursuant to the option
addendum, the quantity, if any, that Eramet must supply MacSteel is conditioned entirely
on the will, wish, or want of MacSteel.  *See* 77A C.J.S. *Sales* § 22 (2006).

MacSteel argues in response to Eramet's motion for partial summary judgment that
the option addendum in the Fort Smith purchase order would have to be read or
interpreted in a vacuum to conclude that no quantity term is specified.  MacSteel contends
that, when the Fort Smith purchase Order is read as a whole, "the only possible
construction . . . is that the option term was intended to allow MacSteel to purchase an
additional 1400 net tons of silicomanganese at $0.3175 per pound . . ."  *See* MacSteel's
Br. in Resp. to Eramet's Mot. for Partial Summ. J. at 9.  The Court disagrees.  Nothing in
the purchase order suggests that the term "additional material" means the "same amount"
of SiMn that MacSteel purchased during the first half of 2004.  The Court believes that it
would have to rely on parol evidence to reach that conclusion; and while parol evidence
might suggest that the parties intended what MacSteel claims is so clear, "[p]arol
evidence cannot create quantity out of thin air, where the writing relied upon to form the
contract is silent as to quantity."  *Thomas J. Kline*, 878 F.2d at 795.

The Court therefore agrees with Eramet that the option addendum in Purchase
Order 04595 fails to specify a quantity term sufficient to satisfy the UCC's Statute of
Frauds.  Accordingly the Court concludes that Eramet is entitled to summary judgment
with respect to MacSteel's claim in Count II of its First Amended Complaint that Eramet
breached the option addendum set forth in the Fort Smith agreement.

16

**IV.    MacSteel's Motion for Partial Summary Judgment as to Count I of its First Amended Complaint**

In Count I of its First Amended Complaint, MacSteel alleges that Eramet breached its promise to supply MacSteel's Jackson facility with its requirements for the second half of 2004.  MacSteel moves for summary judgment with respect to this count, contending that Eramet's representatives have admitted that an oral contract for sale was reached with respect to MacSteel's Jackson facility and that Eramet bound itself to the provisions set forth in the writing confirming that agreement– i.e., Purchase Order 47129M– when it failed to object to the terms contained in the purchase order within ten days after it was received and when it shipped SiMn to the Jackson facility pursuant to that purchase order on January 12, 2004.  As there is a genuine issue of material fact with respect to whether Pompili and McElroy orally agreed that MacSteel would have the option to purchase Jackson's second half requirements from Eramet, *see supra* at 4-5, the Court must assume for purposes of this motion that the option provision was not part of their oral agreement.[8]

To support its motion, MacSteel first relies on the admissions of Eramet's representatives that a contract in fact was reached between Pompili and McElroy and that Eramet considered itself bound to the payment term set forth in MacSteel's purchase order due to its shipment of SiMn to Jackson pursuant to the purchase order.  MacSteel

----

[8]Eramet would be bound to the option provision if (1) Pompili and McElroy orally agreed to the option provision; (2) MacSteel's purchase order constituted a confirmatory memorandum pursuant to the UCC's Merchant's Exception; and (3) Eramet failed to send MacSteel a written objection to the purchase order within ten days after it was received.

17

argues that "[p]ursuant to M.C.L.A. § 440.2201(3)(b), a contract is enforceable 'if the party against whom enforcement is sought admits in his pleadings, testimony, or otherwise in court that a contract for sale was made.'" *See* MacSteel's Br. in Supp. of Mot. for Partial Summ. J. as to Count I, at 7 (quoting MICH. COMP. LAWS ANN. § 440.2201(3)(b)).  However, under Section 2201(3)(b), the alleged admissions of Eramet's representatives only prevent Eramet from asserting the Statute of Frauds as a defense. *See* MICH. COMP. LAWS ANN. § 440.2201(3)(b); *Roth Steel Products v. Sharon Steel Corp.*, 705 F.2d 134, 143-44 (6th Cir. 1983) (explaining that an admission by a party's representative that an oral agreement was reached prevented that party from asserting the Statute of Frauds but did not establish what the parties actually promised each other). Moreover, in the testimony upon which MacSteel relies, Eramet's representatives admitted, at most, that Eramet agreed to deliver 1,400 tons of SiMn to Macsteel's Jackson facility during the first half of 2004.  MacSteel fails to identify any testimony in which an Eramet representative admits that Eramet granted MacSteel an option to purchase additional SiMn during the second half of 2004.  Therefore, if the alleged admissions by Eramet's representatives upon which MacSteel relies establish anything, it only is that an oral contract in fact was reached whereby Eramet agreed to deliver a specified amount of SiMn for a specified price to MacSteel's Jackson facility in the first half of 2004.

MacSteel also argues that Eramet is bound to the terms set forth in MacSteel's Purchase Order 47129M– including the option addendum– due to its failure to object to the purchase order within 10 days of receiving it and due to its shipment of SiMn to the

18

Jackson facility on January 12, 2004. However, as with Eramet's representatives' admissions under Section 2201(b)(3), the only effect of Eramet's failure to object in writing to the purchase order within the 10 day period set forth in Section 2201(2) is that Eramet cannot assert the Statute of Frauds as a defense. MICH. COMP. LAWS ANN. § 440.2201(2) cmt. 3; *Am. Parts Co. (Detroit Body Products Co. Div.) v. Am. Arbitration Assoc.*, 8 Mich. App. 156, 165-66, 154 N.W.2d 5, 11 (1967) (explaining that "it is clear that the only effect of section 2201 'is to take away from the party who fails to answer (within the 10-day period mentioned in that section) the defense of the Statute of Frauds; the burden of persuading the trier of fact that a contract was in fact made orally prior to the written confirmation is unaffected.'")

A different time period is applicable for determining whether an additional term inserted by a party in a confirmatory writing becomes part of the parties' contract.[9] That time period is set forth in UCC Section 2207, which provides, in relevant part:

> (1) . . . written confirmation which is sent within a reasonable time operates as an acceptance even though it states terms additional to or different from those offered or agreed upon, unless acceptance is expressly made conditional on assent to the additional or different terms.
>
> (2) The additional terms are to be construed as proposals for addition to the contract. *Between merchants such terms become part of the contract unless*:

---

[9]The Court assumes, as it must to resolve MacSteel's motion for partial summary judgment, that Pompili's and McElroy's oral agreement did not include an option provision and that the provision, therefore, was an additional term to the oral agreement when set forth on MacSteel's purchase order.

19

. . .

(b) they materially alter it; or

(c) notification of objection to them has already been given or is given within a reasonable time after notice of them is received.

(3) Conduct by both parties which recognizes the existence of a contract is sufficient to establish a contract for sale although the writings of the parties do not otherwise establish a contract.  In such case the terms of the particular contract consist of those terms on which the writings of the parties agree together with any supplementary terms incorporated under any other provisions of this act.

MICH. COMP. LAWS ANN. § 440.2207 (emphasis added).  As this section makes clear, between merchants, additional terms do not become part of a contract if they materially alter the parties' oral agreement or if an objection is given within a "*reasonable time*." Notably, in support of its motion for summary judgment, MacSteel does not argue that Eramet failed to object to the option addendum within a reasonable time; nor does MacSteel argue that the option addendum did not materially alter the parties' oral agreement.[10]

Citing UCC Section 2206(1)(b), MacSteel argues that the option addendum became part of the parties' contract when Eramet shipped SiMn to the Jackson facility on January 12, 2004.  This section is inapplicable, however, as it expressly applies to orders

---

[10]Eramet contends that there are material issues of fact with respect to whether the option addendum materially altered the parties' agreement and whether it objected to the terms of MacSteel's purchase order within a reasonable time.  *See* Eramet's Resp. to Mot. for Summ. J. as to Count I at 12-13.

20

or other offers to buy goods "for *prompt or current* shipment" and the option addendum

pertains to goods to be shipped more than six months after Eramet received the purchase

order.  MICH. COMP. LAWS ANN. § 440.2206(1)(b) (emphasis added).  Instead, as

Section 2207(3) provides, certain conduct by both parties recognizing the existence of a

contract establishes that a contract for sale was made, but the conduct does not bind the

parties to additional or different terms contained in a confirmatory writing prepared by

one of the parties unless there is an express agreement or the terms become part of the

contract under the other provisions of the section.  MICH. COMP. LAWS ANN.

440.2207(3).

      As the Michigan Court of Appeals explained the purpose of Section 2207(3) in

*American Parts Company*:

> Section 2207 proceeds on the assumption that businessmen
> frequently reach firm oral understandings not instantly
> reduced to writing and signed; that it is commonplace for one
> or both to confirm such understandings in writing; that not
> infrequently the writings differ but the parties, nevertheless,
> commence performance, impelled to do so by the exigencies
> of the business world.  The policy of section 2207 is that the
> parties should be able to enforce their agreement, whatever it
> is, despite discrepancies between the oral agreement and the
> confirmation . . . if enforcement can be granted without
> requiring either party to be bound to a material term to which
> he has not agreed.

8 Mich. App. at 167-68, 154 N.W.2d at 12.  In that case, the purchaser accepted and paid

for large quantities of goods pursuant to the seller's written confirmation which contained

an arbitration provision the purchaser claimed was not part of the parties' oral agreement.

*Id*. at 172-73, 154 N.W.2d. at 14-15.  The court concluded that the purchaser's conduct

pursuant to the written confirmation could not be regarded as a manifestation of its assent

to the arbitration provision if the provision was unilaterally added to the parties' oral

contract by the seller.  *Id*.  As the court explained its holding:

> The comments of the National Conference of Commissioners
> on Uniform State laws and the American Law Institute
> indicate that material additional terms do not become part of
> the contract "unless *expressly* agreed to by the other party."
> . . .
>
> Under section 2207, a party, except a merchant in the case of
> an immaterial term, may ignore additional terms, and proceed
> with performance of the agreement actually negotiated by the
> parties without fear that such performance will be interpreted
> by court or jury as acceptance of the other party's additional
> terms.  The fact that, following an oral agreement, one or both
> of the parties resorts to what some call the battle of the forms,
> does not, under section 2207, change the agreement or
> prevent the formation of the contract, or place one party or
> another in the position of waiving the benefit of the agreement
> or becoming bound to unagreed small or large print by
> proceeding with performance of those terms upon which the
> parties, in fact, did orally agree.

*Id*. at 173, 154 N.W.2d at 14-15 (emphasis in original).

For the above reasons, if Pompili and McElroy did not reach an oral agreement

whereby Eramet agreed to give MacSteel an option to purchase its Jackson facility's

SiMn requirements for the second half of 2004, Eramet was not bound to the option

provision contained in MacSteel's subsequent purchase order due to its failure to object to

the purchase order within ten days of receipt or due to its shipment of SiMn to the

Jackson facility on January 12, 2004.  Furthermore, Eramet's representatives' admissions

22

that an oral agreement was reached between Pompili and McElroy do not relieve
MacSteel of its burden of establishing the precise terms of that oral agreement.
Accordingly, this Court concludes that MacSteel fails to demonstrate that it is entitled to
summary judgment with regard to Count I of its First Amended Complaint.

## V.    MacSteel's Motion for Partial Summary Judgment as to Count II of its First Amendment Complaint

MacSteel contends that there is no genuine issue of material fact that Eramet
agreed to supply MacSteel's Fort Smith facility with 1,400 tons of SiMn at $0.3175 per
pound for delivery by April 2004.  According to MacSteel, there also is no genuine issue
of material fact that Eramet repudiated the parties' agreement and that MacSteel suffered
$300,221.17 in cover damages as a result of Eramet's breach.  MacSteel therefore seeks
summary judgment with respect to Count II of its First Amended Complaint.

In response to MacSteel's motion, Eramet primarily argues that there is a genuine
issue of material fact as to whether McElroy– MacSteel's Purchasing Manager for its
Jackson facility and the individual who negotiated the agreement with Eramet's
representative– possessed the authority to enter into an agreement binding MacSteel's
Fort Smith facility.  Eramet contends that, because McElroy knew that he lacked the
authority to bind Fort Smith, he never believed that he negotiated a contract with Pompili
and therefore there was no meeting of the minds.

To support its argument, Eramet points to McElroy's testimony during his
deposition that he does not have unilateral authority to place any orders on Fort Smith's

23

behalf unless Weeks, MacSteel's Purchasing Manager for Fort Smith, specifically

contacts him and authorizes him to do so.  Eramet also relies on McElroy's statement in

his e-mail to Weeks at 5:16 p.m. on December 4, 2003, which Eramet apparently

presumes was after McElroy's final telephone conversation with Pompili, that:

> I placed the orders with Eramet.  Notably they quoted net 30
> days and they said they must hold to this, especially
> considering the reduced price.  We agreed to stay with our
> standard terms (2nd day of 2nd month) and raise the Jackson
> price back to $.32 to compensate them, **and I told Tom
> [Pompili] that you would call them [Eramet] to advise
> what you want to do.** . . .

*See* Eramet's Resp. to MacSteel's Mot. for Partial Summ. J. as to Count II at 4 (quoting

Ex. 8)(emphasis and bracketed terms added by Eramet).  Eramet points out that Pompili

testified that Weeks never contacted him to discuss what Weeks wanted to do regarding

Eramet's sale of SiMn to Fort Smith.  Eramet therefore contends that Weeks unilaterally

established the terms of sale for the Fort Smith facility in the purchase order he

subsequently sent to Eramet.

As an initial matter, and as Eramet indicates, McElroy testified that he did not have

the unilateral authority to negotiate on behalf of the Fort Smith facility unless Weeks

granted him such authority.  But there is no evidence establishing that Weeks did not

grant McElroy authority to enter into a contract for Fort Smith prior to McElroy's

negotiations with Pompili.  In fact, the undisputed evidence is to the contrary.

Weeks testified that he asked McElroy to submit the RFQ with a request to quote

for Fort Smith.  *See* MacSteel's Reply to its Mot. for Partial Summ. J. as to Count II,

24

Addendum 1 (Weeks Dep.) at 25-26.  Weeks further testified that he and McElroy work

together a lot transacting business for their respective facilities and that when they do,

they decide which individual "is going to lead out" the particular deal.  *See id*. at 23.

Weeks explained that whoever leads out the particular transaction has the authority to

enter into contracts on behalf of the other individual's facility and that McElroy has

placed orders on Weeks' behalf in the past.  *See id*. at 23-24.  Thus, in this Court's view,

there is no genuine issue of material fact that McElroy had the authority to enter into a

contract on behalf of Fort Smith.

Thus this Court finds no genuine issue of material fact with regard to whether

MacSteel and Eramet reached an oral agreement whereby Eramet agreed to deliver 1,400

tons of SiMn to MacSteel's Fort Smith facility at a price of $0.3175 per pound by April

2004.  Accordingly, to prevail on Count II of its First Amended Complaint, MacSteel

only must establish that Eramet repudiated that agreement and that MacSteel suffered

damages as a result.  MacSteel's evidence clearly demonstrates that Eramet unequivocally

repudiated the Fort Smith agreement.  *See, e.g.,* MacSteel's Mot. for Partial Summ. J. as

to Count II, Addendum 3 (Kalish Dep.) at 43; 59 & Ex. J.  In fact Eramet does not even

dispute that it repudiated the Fort Smith agreement.  As to damages, MacSteel asserts that

it incurred cover damages in the amount of $300,221.17.  As Eramet points out in its

response, however, MacSteel fails to present any evidence to support its asserted

damages.  MacSteel cites several deposition pages to support its claimed damages in its

reply brief.  The Court, however, was not able to locate some of the pages MacSteel cited

and, of those pages the Court did locate, it could not find any discussion on the issue of damages. Nevertheless, the Court concludes that Macsteel is entitled to summary judgment as to Count II of its First Amended Complaint with regard to Eramet's liability. The damages issue can be resolved at a later date.

## VI.   Conclusion

In conclusion, the Court finds that the option addendum in the parties' Fort Smith agreement fails to state a quantity term and therefore fails to satisfy the Statute of Frauds. The Court therefore holds that Eramet is entitled to summary judgment with respect to MacSteel's claim in Count II of its First Amended Complaint that Eramet breached the option addendum. With respect to Count I of its First Amended Complaint, the Court cannot conclude as a matter of law that the option addendum contained in MacSteel's Purchase Order 47129 M became a term of the parties' Jackson agreement. The Court therefore denies MacSteel's motion for partial summary judgment as to Count I. The Court concludes, however, that MacSteel has demonstrated an absence of a genuine issue of material fact and that it is entitled to judgment as a matter of law with respect to its claim that Eramet breached its promise to deliver SiMn to MacSteel's Fort Smith facility during the first half of 2004. The damages, if any, to which MacSteel is entitled as a result of Eramet's breach can be addressed at a later date.

Accordingly,

**IT IS ORDERED**, that Eramet's motion for partial summary judgment is **GRANTED** and MacSteel's claim in Count II of its First Amended Complaint with

26

respect to Eramet's agreement to deliver goods to MacSteel's Fort Smith facility during the second half of 2004 is **DISMISSED WITH PREJUDICE**;

**IT IS FURTHER ORDERED**, that MacSteel's motion for summary judgment as to Count I of its First Amended Complaint is **DENIED**;

**IT IS FURTHER ORDERED**, that MacSteel's motion for summary judgment as to Count II of its First Amended Complaint with respect Eramet's agreement to deliver goods to MacSteel's Fort Smith facility during the first half of 2004 is **GRANTED IN PART AND DENIED WITHOUT PREJUDICE IN PART** in that MacSteel's motion is granted with respect to Eramet's liability but is denied without prejudice with respect to MacSteel's damages.

s/PATRICK J. DUGGAN
UNITED STATES DISTRICT JUDGE

Copies to:
Jonathan S. Groat, Esq.
Terry A. Shulsky, Esq.
Daniel R. Gravelyn, Esq.
Jeffrey G. Muth, Esq.
Scott R. Murphy, Esq.